We'll hear argument next in 2892, United States v. Braggs. Ms. Lee. Good morning, your honors. May it please the court, my name is Tiffany Lee and I represent the government in this matter. On May 19, 2018, New York State parole officers conducted a search of the defendant Shamar Braggs' residence in Buffalo based on information they received that Mr. Braggs may have guns in his possession. Mr. Braggs was on parole for a criminal sale of controlled substance and one of the conditions of his parole was that he was not to possess firearms or any ammunition. And when he first began his parole, Mr. Braggs executed a certificate of release permitting New York State parole to search or inspect his person, property, and residence. Upon the search of Mr. Braggs' residence, parole officers found, among other things, guns, ammunition, and drugs, and Mr. Braggs was charged federally. Your honors, the courts below erred in their determination that the New York State parole search here was unreasonable and therefore violated the Fourth Amendment. And this court should reverse the decision order granting suppression below. I hope that you will at some point address also the question of suppression, whether suppression is warranted in any event. I will, your honor. I'll start with whether or not there were any constitutional violations and then I will turn to the exclusionary rule. Just leave enough time for that for me. I will. In essence, the Fourth Amendment does not require reasonable suspicion. And basically, the determination of the courts below rested solely on the fact that the information leading to the search came as a result of an anonymous tip to parole. The courts below improperly concluded that because the tip did not meet the standard for reasonable suspicion that the search was unreasonable. But that's not what the amendment requires, either under what the Supreme Court said in Sampson v. California or what the New York State Court of Appeals said in People v. Huntley. With respect to the Supreme Court, the Supreme Court has consistently said that the touchstone of the Fourth Amendment is reasonableness. And specifically, in looking at California's framework in permitting warrantless and suspicionless searches of parolees, the Supreme Court had to balance in terms of the degree to which the search intrudes on an individual's privacy and the degree to which it is needed for the promotion of legitimate government interest. In Sampson, the Supreme Court was looking at language in the search condition in California that gives consent to be searched at any time with or without cause. But in New York, isn't the language different? And didn't the Court of Appeals in Huntley say that the language is not to be taken as an unrestricted consent to any and all searches whatsoever? It's true that that's what the New York State Court of Appeals said with respect to Huntley, that it's not to be considered as a completely unbridled search. But, Your Honor, with respect to what is required under the Fourth Amendment constitutionally, according to the Supreme Court, I don't think the difference necessarily changes the analysis. And here's the reason why. The whole purpose of consent is basically an evaluation of what is the parolee's legitimate expectation of privacy. And already, a parolee starts off even worse than a probationer because someone who's on parole is more akin to someone who's on probation. And then, ultimately, in addition to that, the Supreme Court in Sampson said, you know what, in addition, it's salient that the fact that the parolee has to consent before they can be on parole. And so they have notice as to what the expectations are vis-a-vis their expectation of privacy, such that at the end of the day, their expectation, any legitimate expectation, is really substantially diminished. And this is weighed against the government's interest. Similarly, that's what we have here. And indeed, if you kind of track our cases, this court's cases, with respect to application of Huntley, this court in Newton even said that the consent requirement per the New York state regulations already exceeds what Huntley requires. Remind me, if you will, if there's an in-state applicable case that applies to anonymous tips. With respect to, we have not, that's where the distinction lies, Your Honor, because of the fact that we have not gone so far as to address the issue of anonymous tips. So what distinguishes this case from the case in which you sat on, Judge Sack, in United States v. Barner? I'm sure I remember it extremely well. Go ahead. And then the earlier case of United States v. Newton, in both those cases, parole received information. In Newton, they received information that the parolee was threatening someone with a gun. And in Barner, the case on which you sat, they received information that the parolee had discharged a gun. And then they went immediately to search the parolee. Now, the only distinction here, the information came from an anonymous tip. But there's nothing about Huntley's rationally and reasonably related to the performance of a parole officer's duty that says anything about requiring reasonable suspicion. And even, indeed, if you look at the Directive 9404, all it says is an articulable reason. And I submit that the reason that's there is to buttress against arbitrary and capricious actions on the part of the parole. So if you actually read 9404 carefully, it already incorporates Huntley's standards. Your position is that under Huntley, the only thing... So I guess we're stuck with this idea that under Huntley, we don't think that parolees have consented to all searches. But you're saying the only searches from which they're protected are ones that are totally arbitrary. Because, you know, rationally and reasonably related to the performance of the parole officer's duty is pretty expansive. That would justify suspicionless searches, even just to check that the parolee is not violating parole, right? I mean, what's the limitation under your standard? Here's the reality. When you're looking at Sampson, Sampson is already saying that under California's system, there's no need to even look at individualized suspicion. Basically, a parole officer can go and conduct a suspicionless search. That is all that the Constitution requires in terms of reasonableness when you're weighing a parolee's interest versus the interest of a probation... Excuse me. Against the interest of the government having a system of parole. Can I take it, Ms. Lee, that your point is that Sampson sets the constitutional floor on what a parolee's expectation of privacy is. And that if New York wishes to impose a higher standard, the higher standard is not relevant in the context of what's constitutionally permissible in the context of suppression in a federal court. Is that it? Exactly, Your Honor. And I see I'm running out of time. I really do want to judge... Well... Excuse me... Well, just before you go, I'll implore the chair, the senate chair, to give you a few more seconds. Let me ask you this. Let me ask you this. One of the problems I have with this case is that the magistrate doesn't say much about what's, to me, a bit of a disturbing aspect of this case. These chrono notes that are taken by the parole officers, the original justification for the warrant is a curfew check, right? Your Honor, but the reality... Isn't that what appears in the chrono notes? That appears in the chrono notes. However, Your Honor... Where does anonymous tip appear in the chrono notes? It does not. It doesn't. However... When does it appear? It appears in the testimony of the officers at the suppression hearing, right? That's correct. However, Your Honor, I mean, the magistrate specifically said that he found all the parole officers to be wholly credible. Well, nobody asked the parole officer... No one asked the parole officer if this was really pursuant to a curfew check. They asked him why, and he told them that. They didn't have to find him not credible as to that, did they? Your Honor, that may not be the case, but the reality is... The testimony of the parole officers is what prompted the search was that there was information from the senior parole officer about the anonymous tip, and that as, you know, pursuant to the anonymous tip, they went to execute the search. Okay. And, you know, this record was before the magistrate and the... Would it make a difference if it were a curfew check? I mean, wouldn't a curfew check also be reasonably related to the parole officer's duties? It would be. It would be. It certainly would be, but once they find he's in his house, what else do they have to do? Well... I mean, if they're trying to decide if he's in his house and he's in his house, what more... The reason why they went to his house is satisfied, isn't it? It is, Your Honor. The reason why they go into his house is because they have a tip that he's got guns. That's different than just saying that he's not in his house, right? But, again, this goes back to the articulable reason in which, you know, there is information that suggests that there is a potential either violation of conditions of release or something that might impact the safety of the public, in which case the Huntley standard has been satisfied. Because, again, Huntley does not require reasonable suspicion. No, and I agree with you on that. I agree with you on that, maybe much to the dissatisfaction of your opponent. But are you saying to me that if a parole officer went merely to check on whether the parolee was honoring his or her curfew, that that would justify a full search of the house? But that's not the reality here, Your Honor. I'm not asking that. I'm asking you now if the reason for the search was just a curfew check and the parolee was found there. Is it the government's position that the parole officer under Sampson and other Supreme Court doctrine could go beyond just checking to see if the parolee was in the house and could go on and search the entire house? Yes, under both Sampson and Huntley. Okay. All right. Yep. Thank you. Because you're, I apologize. I do have time for rebuttal. Ms. Lee, why don't you just briefly, in a few seconds, respond to the suppression issue? So, with respect to suppression, the application of the exclusionary rule here is supposed to be only as a matter of last resort. And here, when you read the testimony of the probation officers, they thought they were following everything they were supposed to do because of the fact that they had information, information relating to a parolee not being in compliance. And this went through their systems in terms of having been approved by a senior parole officer. And, therefore, they executed the search. And if you were right, and if you were right on this, then the rest of the argument would not matter? If I were right on this. To the result. To the result. To the result in terms of, yes, because of the fact that, you know, exclusionary, you know, the error is twofold. One is that we believe there was no constitutional violation. Right. The second part is exclusion should not have been applied here. In any event. In any event, correct. Okay. I have two minutes for rebuttal. Thank you. Thank you. Again, on rebuttal, let's turn to the appellee, Mr. Rumi. Good morning, Your Honors. Boris Rumi, appearing on behalf of Shamara Bragg. May it please the Court. Your Honors, I would first begin regarding counsel's reliance on Sampson. I would argue that per the case law cited in Mr. Bragg's brief, including Griffin and Newton, the high court's ruling in Sampson does not mean that there are no Fourth Amendment protections. Pursuant to the case laws cited, there still needs to be a rule of regulation that satisfies a Fourth Amendment to reasonableness requirement. In Sampson, as Your Honors noted, this was based in California where the parolees agreed to suspicionless searches without any reasonable basis. But even in Sampson, the court noted that there was a California prohibition against arbitrary and capricious searches. So, there was still a Fourth Amendment protection. In the case at Barr, New York State, you know, took place in New York State, and there is a Fourth Amendment protection, which is reasonableness. Also, Directive 9404, there needs to be reliable information based on specific, particular facts, which was not the case here. As the court is aware, the government changed their theory of even the basis for the search of Mr. Bragg's residence three times. At first, the New York State parole officers and the Buffalo Police Department claimed that it was based on a parole warrant. Then, they claimed it was a curfew check. Then, over a year later at the suppression hearing, they claimed for the first time that it was a non-mis-tip. Not only that, but they never gave any further information, you know, what was the source of the tip. The person who even supposedly received the tip never even testified before the district court. The magistrate did find that the witnesses who were subpoenaed by the government were reliable, but the magistrate did not rule on the reliability of the anonymous tip. In fact, the court was troubled because it was unreliable. You know, counsel cites Newton, but in Newton, it was not anonymous. Can I just ask, this shift in the justification, what significance does it have? I mean, are you asking us to conclude that even if it's an anonymous tip, it's not justified, or do you think that that shows that there was not an anonymous tip? I think it shows both, Your Honors. I think on the first issue, to be perfectly honest, I think it's likely that the New York State authorities or the government intentionally manufactured an anonymous tip claim. And this goes into the argument of the exclusionary rule. This case is a clear example of abuse by the state government and the federal government. The fact that they changed their theory three times and they saved their strongest theory for the day of suppression testimony is very suspect. But you're confronted with the fact that there's a credibility finding by the hearing officer. So, so much for that. I mean, well, unless you're going to say it's clearly erroneous, but it doesn't seem to me like you made an awful lot of the inconsistency between the Cronon notes and or the filings in state court where the search is justified on a parole warrant when there was no warrant issued at all. I mean, the real battle in front of Magistrate Romer was about the lack of reliability of the informant, wasn't it? It was. And so I would agree, Your Honor, that I would submit that the lack of reliability, contrary to Newton and the other cases cited in Mr. Bragg's brief, does not satisfy Directive 9404, nor does it satisfy reasonable suspicion. What do you do with that? What do you do with the fact of our case law, like Pforzheimer and other cases where we've said that, well, it may violate state law with regard to the search. It's in federal court. It's the constitutional standard. And doesn't Samson define that standard? Are you saying that the state consent and the directive are what define a reasonable expectation of privacy for a Fourth Amendment purposes? Is that what you're saying?  And if you're wrong about that, if you're wrong about that, because Samson is about the constitutionality of California's practice of doing that, Justice Thomas, I, you know, I agree with you. I think it's easy to assume that. But what if you're wrong about that? What then? If the standard is that it's reasonably related to the performance of the parole officer's duties, doesn't that sound like an articulable reason? Isn't that exactly what Hotley says too? Well, Your Honor, I would argue that even if that is the case for the sake of argument, you know, in a parole case, Directive 94.4 needs to be followed. That is the Fourth Amendment protection in place. And that was clearly not followed here. There were no specific facts given to the parole officer. There was just a vague anonymous suggestion through multiple levels of hearsay that there may be guns in Mr. Bragg's home. This is very different from the specific factual evidence. Putting aside questions as to whether there was an anonymous tip, if, in fact, we accept that there was an anonymous tip and that the parole officers went to Mr. Bragg's house to look for guns, was that action reasonably and rationally related to the performance of the parole officer's duty? So if we think that that does not require reasonable suspicion, then the search was permissible. I would still argue, Your Honor, that even if that were the case in this specific case, there were no specific facts. There was no indicia of reliability of the tip. And, in fact, the parole officer himself testified that their department follows up on every single anonymous tip, including conducting warrantless searches without first even attempting to vet the quality of the tip, which I find very troubling. It just opens the door for abuse and degradation of the Fourth Amendment. I don't know you personally, but was it argued to the magistrate and or to Judge Scrotney below that, even if you accepted that Samson was going to define the standard here, that this was an arbitrary and capricious search in light of the inconsistency between the chrono notes and the reasons offered at the time of the hearing? And the state court filing about the existence of a warrant and none being existing. Was that argued to the district court? Your Honor, I believe it was argued based on my review of the suppression transcripts. So I was not the trial attorney, but based on my review of prior counsel, Mr. Albert's suppression transcripts of the suppression hearing, I believe he did make that argument. But Judge Scrotney's decision to suppress was premise on the deviation from the state standards, right? Yes, it was. All right. So Mr. Bragg's expectations of privacy. So he signed the condition of release form that says I will permit my parole officer to visit me at my residence and I will permit the search and inspection of my person, residence and property. I mean, that statement by itself doesn't seem to have any caveats or limitations. He just says he's going to permit all these searches. So then what's the basis of his expectation that he would have some privacy from the parole office? I would argue that it's based on Directive 9404, which was in effect at the time of and prior to this warrantless search. If he had signed this form and there were no directives, would you read it as a consent to any search from the parole office? I would not, Your Honor, only because, again, as a stress of the brief, Mr. Bragg didn't really have a meaningful choice. Yes, every day, thousands of incarcerated, convicted felons sign releases to be released to parole, but they don't really have a choice. They know that if they want to be released, they have to sign this condition. I mean, that's not... I would argue it's not a choice. Okay. But, again, based on Griffin and Newton, I would argue that even if this court were to find that Directive 9404 and Huntley somehow exceeded the Fourth Amendment requirements, I would argue that based on Newton and Griffin, a warrantless search still cannot be unreasonable. There still has to be some reasonable basis for the search, and here... I think we have that argument. Can I ask just about the exclusionary rule before you... Thank you. So the Supreme Court has said that the standard for objective reasonableness and for qualified immunity is the same as the standard that governs the good faith exception to the exclusionary rule under the Fourth Amendment, and our court has given qualified immunity to officers who have conducted a suspicionless search of a New York parolee. So we have said that the law is not clearly established in that area. Does that mean just automatically that the exclusionary rule shouldn't apply because the good faith exception is met? I would argue that it doesn't, Your Honor, the reason being that the purposes are slightly different. Here, you know, Mr. Bragg does not sue the police officers or the parole officers. I would say the real purpose of the exclusionary rule is to determine if there was a constitutional violation and if rejecting the fruits of that search, if the benefits to society outweigh the potential harm of suppressing evidence against someone who may have allegedly committed a crime. I would argue that's a separate issue from whether or not a police officer or parole officer should receive qualified immunity in case there's the subject of a lawsuit. Here, you know, based on both the shifting, the multiple theories expounded by the state and federal government, the utter unreliability and vagueness of the supposedly anonymous tip, if there ever even was an anonymous tip, you know, and the fact that, you know, Mr. Bragg's Fourth Amendment rights were clearly ignored, I would argue that for this court to grant the government's appeal would seriously undermine Fourth Amendment protections for thousands of men and women on parole. And it would just really harm everyone. It would impair the ability of parolees to reenter society. All right. Thank you, Mr. Rumi. I think we have that argument, and your time has expired. Thank you, Your Honor. We reserve two minutes for rebuttal. Ms. Lee. Thank you, Your Honor. I just wanted to go through kind of the history very quickly that this court has suggested with respect to, you know, where Sampson fits in relationship to Huntley and where these rules pertaining to consent fit in relationship to Huntley. So this court in United States v. Barner noted that Sampson was probably the floor, represented a lower threshold than what Huntley represented. And then in United States v. Newton, this court stated that to the extent that a parolee is required to consent to sign the certificate of release, that that requirement is not only coextensive, but it exceeds the Fourth Amendment protections that Huntley provides. So we actually dovetail back to Sampson because in Sampson, in looking at whether or not a parolee has a legitimate expectation of privacy, part of the salient circumstance was the issue of consent. So now we're now all the way back to the threshold that Sampson has provided and where you're evaluating the expectation of privacy versus the government interest. And there, the Supreme Court firmly held that given all these considerations, where a parolee has actually signed and knows that he is subject to searches from the parole office, there is no need for reasonable suspicion in order for parole to conduct that search to conform with the Fourth Amendment rights. Thank you, Ms. Fine. Can I ask you one small question, which is, you just said the parole office. But of course, Huntley says conduct which may be unreasonable or restricted to a parolee, if undertaken by a police officer, may be reasonable if taken by the parolee's own parole officer. Does it matter that Bragg's own parole officer, Officer Williams, was not present at this search? No, it does not, because he's still, it's still being supervised by the parole office. It's, you know, this is parole office, you know, they all represent the same institution. Probation Officer Bailey was, you know, executing it on behalf of Officer Williams. He was, you know, he's aware of the conditions of release to which Bragg's is subject to. So it's similar to us in terms of the government. We're one government. They're one parole office. Okay. All right. Thank you, Ms. Lee. The case is submitted.